IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| MICHAEL SKWARLO ) | |
| ) | Case No. 3:24-cv-00544 |
| v. ) | |
| ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION ) | |

To: The Honorable William L. Campbell, Jr., Chief United States District Judge

## REPORT AND RECOMMENDATION

Plaintiff Michael Skwarlo filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying him supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 12) and memorandum in support (Docket No. 12-3), to which Defendant SSA has responded in opposition (Docket No. 16) and Plaintiff has replied (Docket No. 18). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 17.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 12) be **DENIED**.

## I. INTRODUCTION

On April 7, 2022, Plaintiff proactively filed an application for SSI. (Transcript of the Administrative Record (Docket No. 10) at 27).[1] He asserted that, as of the alleged onset date of August 1, 2010, he was disabled and unable to work due to Type 1 diabetes, irritable bowel syndrome ("IBS"), Crohn's disease, and neuropathy in both legs. (AR 193.) These claims were denied initially on April 28, 2022 and upon reconsideration on June 6, 2022. (AR 27.) On April 4, 2023, Plaintiff appeared with attorney J. Peyton Chambers and testified at a telephone hearing conducted by ALJ Robert Martin. (AR 42–58.) On April 21, 2023, the ALJ denied the claim. (AR 27–37.) On December 12, 2023, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the SSA. (AR 11–13.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. THE ALJ'S FINDINGS

In his April 21, 2023 unfavorable decision, the ALJ included the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since August 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has the following severe impairments: diabetes mellitus, irritable bowel syndrome, and peripheral neuropathy (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally climb ramps and stairs, never climb ladders ropes or

---

[1] The Transcript of the Administrative Record is referenced by the abbreviation "AR" followed by the Bates-stamped number(s) in black print in the bottom right corner of each page.

scaffolds, occasionally stoop, crouch, kneel, crawl, and balance. He should avoid all exposure to work around hazardous machinery, moving parts, and work at unprotected heights.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on March 14, 1987 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR, 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2010, through the date of this decision (20 CFR 416.920(g)).

(AR 30–37.)

### III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSIONS AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that

would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, he is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, he is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on his residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), he is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs*., 945 F.2d 1365, 1369 (6th Cir. 1991).

A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

If the case contains an adequate record, "the [SSA's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

**B.     The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps: (1) he had not engaged in substantial gainful activity since the alleged onset date, and (2) his impairments of diabetes mellitus, IBS, and peripheral neuropathy were severe.[2] (AR 30–31.) However, the ALJ determined at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 31.) At step four, the ALJ determined that Plaintiff

---

[2] The ALJ found that Plaintiff's mental impairments of personality disorder, depression, and anxiety did not cause more than minimal limitation to Plaintiff's ability to perform basic work activities and were, accordingly, non-severe impairments. (AR 30.)

5

had the RFC to perform light work with certain postural and environmental limitations. (AR 31–36.) At step five, the ALJ determined that Plaintiff could not perform past relevant work but could perform other work such as cashier, assembler, and housekeeper hotel. (AR 36–37.) Therefore, the ALJ concluded that Plaintiff was not under a disability from August 1, 2010 through April 21, 2023, the date of the decision. (AR 34.)

**C.     Plaintiff's Assertion of Error**

Plaintiff requests that this case be remanded for further consideration based on one assertion of error: the ALJ improperly evaluated Plaintiff's RFC.[3] (Docket No. 12-3 at 9–16.) Plaintiff asserts that the RFC assessment fails to account for his severe IBS symptoms. He argues that the ALJ ignored the record evidence, including medical evidence, his function reports, and his hearing testimony. He believes that all of this evidence shows that greater limitations were needed in the RFC for his IBS symptoms.

In response, the SSA argues that substantial evidence supports the ALJ's determination of Plaintiff's RFC. (Docket No. 16 at 5–11.) The SSA contends that the ALJ properly determined that the record did not support Plaintiff's subjective complaints about his IBS symptoms. In particular, the SSA asserts that the ALJ properly considered the record as a whole, including medical evidence, hearing testimony, prior administrative medical findings, Plaintiff's conservative medical treatment, and Plaintiff's lack of medical insurance.

---

[3] Despite the Court's clear instruction, Plaintiff did not explicitly indicate whether remand is being sought pursuant to sentence four or six of 42 U.S.C. § 405(g). (Docket No. 11 at 2 n.3.) The Court assumes that Plaintiff is seeking remand under sentence four, which allows a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Plaintiff has not asked for consideration of additional evidence, which is the requisite basis for a remand sought pursuant to sentence six.

In essence, Plaintiff challenges the ALJ's assessment of his RFC, which is "the most a claimant can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009). *See* 20 C.F.R. § 416.945(a). Courts review an ALJ's RFC determination for substantial evidence. *See Blakley*, 581 F.3d at 405–06. "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). An ALJ "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

The Court begins with a review of the medical evidence pertaining to Plaintiff's IBS symptoms. The first evidence in the record appears on May 26, 2021 when Plaintiff was hospitalized for complaints of hyperglycemia, a condition where blood sugar levels are too high. (AR 332–55.) The records indicate that Plaintiff denied diarrhea or changes in bowel movements. (AR 342.) He was assessed with diabetic ketoacidosis and major depressive disorder, and was discharged two days later. (AR 348.) A few months later, on July 15, 2021, Plaintiff presented to a clinic with complaints of diarrhea and Covid-19 exposure, though his care plan focused on his diabetes rather than any IBS symptoms. (AR 455–57.) He was then admitted to the hospital for diabetic ketoacidosis a few days later, on July 26, 2021, but did not report any IBS symptoms. (AR 356–90.)

Later that year, on November 4, 2021, he presented to a clinic with complaints of intermittent constipation and diarrhea. (AR 299–306.) He was assessed as having IBS; started on

7

dicyclomine, a gut antispasmodic that treats diarrhea; and counseled to continue using Colestid, a cholesterol-lowering drug that treats diarrhea. (AR 301.) He had a follow up visit on December 2, 2021 and reported that his symptoms of diarrhea had significantly improved during the day but not at night. (AR 296–99.) He also reported that he had previously been diagnosed with Crohn's disease, but he could not remember details of this diagnosis. (AR 298.) He was counseled to continue with dicyclomine and Colestid as needed. (*Id.*)

Less than two months later, on January 17, 2022, Plaintiff was hospitalized again, this time for intractable nausea and vomiting. (AR 391–437.) Plaintiff reported that he previously had a bowel resection, but since then had not had "any GI symptoms and denies any nausea, vomiting, constipation or diarrhea and is able to eat regular food without any difficulty." (AR 419.) However, medical records from this hospitalization indicated that Plaintiff was assessed with diarrhea and had a history of IBS. (AR 417, 425.) Plaintiff was diagnosed with colitis and discharged on January 20, 2022. (AR 425.)

A few months later, on March 10, 2022, Plaintiff presented at the emergency department for hyperglycemia. (AR 438–44.) He was counseled to take Imodium for his chronic diarrhea symptoms and was discharged on that same day. (AR 441, 444.) Later that year, on November 2, 2022, Plaintiff presented to the emergency department again for complaints of nausea, vomiting, and diarrhea with hyperglycemia, but he was discharged that day after his diabetic ketoacidosis was resolved. (AR 532–602.) The medical records for that visit did not reference any ongoing IBS symptoms.

In his decision, the ALJ determined that Plaintiff had the RFC to perform "light work" with certain restrictions:

> . . . occasionally climb ramps and stairs, never climb ladders ropes or scaffolds, occasionally stoop, crouch, kneel, crawl, and balance. He should avoid all exposure

to work around hazardous machinery, moving parts, and work at unprotected heights.

(AR 31.) The ALJ characterized Plaintiff's overall treatment record as "showing issues with irritable bowel disease and diabetes with doctors recommending an insulin pump." (AR 35.) However, the ALJ concluded that, although Plaintiff was hospitalized several times for diabetic ketoacidosis, "[p]oor compliance was at the heart of each admission and he quickly improved with treatment." (AR 35.) Nevertheless, the ALJ found that, considering the evidence as a whole, a range of "light work" was appropriate because of Plaintiff's type-1 diabetes, neuropathy, and IBS. (AR 35–36.)

In making this determination, the ALJ considered the opinions of state agency consultants, hearing testimony from Plaintiff and a vocational expert, Plaintiff's medical records, and two function reports that Plaintiff completed. (AR 32–36.) Based on this consideration, the ALJ concluded that, although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence. (AR 36.)

With respect to the medical evidence related to Plaintiff's IBS symptoms, the ALJ discussed Plaintiff's hospitalizations in May 2021 for headache and nausea, July 2021 for diabetic ketoacidosis, January 2022 for nausea and vomiting, March 2022 for hypoglycemia, and November 2022 for nausea, vomiting, diarrhea, and hyperglycemia. (AR 33–34.) The ALJ also discussed certain of Plaintiff's office visits to his medical providers, including his December 2021 follow up appointment for issues related to IBS and diabetes. (AR 33.) According to the ALJ, Plaintiff "reported significant improvement in his diarrhea after starting Bentyl [dicyclomine] but continued to note multiple episodes at night." (*Id.*) The ALJ stated that, during that visit, Plaintiff

reported being previously diagnosed with Crohn's disease, but the nurse was unsure if Plaintiff had Crohn's disease or IBS. (*Id.*) The ALJ also discussed Plaintiff's March 2022 visit where he was given Imodium for his chronic diarrhea. (AR 34.) The ALJ made the following general conclusions about Plaintiff's treatment and medical history:

> The claimant has not received the type of treatment one typically associates with a totally disabled individual. He has not required any repeated hospitalizations of an extended duration nor needed frequent ER visits due to exacerbations. He has type 1 diabetes and has had some brief hospitalizations because of DKA. However, most, if not all, of these episodes going back to May 2021 show the claimant was noncompliant with treatment, either not taking his insulin as prescribed or going weeks without taking it at all because of finances. The most recent admission on file for DKA in November 2022 showed the claimant reported he had been too busy to take his insulin. The claimant has IBS, including a history of bowel resection, and diabetic neuropathy. However, a provider described the neuropathy as "fairly mild" and the claimant reported that gabapentin provided "a lot of relief." . . .

(AR 34–35.) The ALJ ultimately concluded that Plaintiff's medically determinable conditions and symptoms were not as severe as alleged. (AR 35.)

In addition to medical records, the ALJ examined the findings of two state agency physicians, Dr. Richard Tipton and Dr. Harry Cole, both of whom considered Plaintiff's medical conditions and formulated an RFC. (AR 83–86, 93–95.) ALJs must consider the medical findings of state agency medical consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). *See Miller*, 811 F.3d at 834 (6th Cir. 2016) ("State agency medical consultants . . . are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."). The reviewing physicians considered Plaintiff's reported worsening symptoms related to Crohn's disease, aggravations to his IBS, continued abdominal pain and discomfort, and frequent bowel moments that "inconveniently require[] him to have bathroom access at all times." (AR 85, 95.) Nevertheless, the physicians found that Plaintiff could perform light work with certain limitations, including that he could

10

occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; that he could stand, walk, or sit for about 6 hours in an 8 hour workday; that his pushing and pulling with his lower extremities should be limited due to his neuropathy; that he could never climb ladders or scaffolds in case of blood sugar changes; and that he should avoid all exposure to hazards, including machinery and heights due to his neuropathy. (AR 84–86, 94–96.) The ALJ found these opinions to be "generally persuasive" because the physicians thoroughly evaluated the medical evidence and provided specific reasons for their assessments. (AR 35.) The ALJ stated that the findings were consistent with Plaintiff's overall treatment record, which showed "issues with irritable bowel disease and diabetes with doctors recommending an insulin pump." (*Id.*)

The ALJ also reviewed two function reports that Plaintiff completed in April 2022 and May 2022. (AR 32–33.) In those reports, Plaintiff reported on his illnesses, daily activities, and abilities. According to the ALJ, in his first report, Plaintiff "reported he had no problems attending to his personal care needs, but could no longer help with chores." (AR 32.) In short, Plaintiff reported an ability to engage in most activities, but stated that he could not go out alone and used a brace when he did go out. (AR 32–33.) In his second report, the ALJ found some "notable differences" from the first report, including new statements from Plaintiff that he had difficulty putting on pants; could only walk, stand, or sit for an hour; could walk up to only half of a mile; and had anxiety triggered by stress. (AR 33.) Plaintiff did not reference using a brace. (*Id.*)

In addition, the ALJ relied on testimony from the administrative hearing, including statements from both Plaintiff and a vocational expert. With respect to Plaintiff's IBS symptoms, the ALJ referenced Plaintiff's hearing testimony that he "had to go to the restroom 10 to 20 times a day on average" and "did not eat breakfast usually because of his stomach issues." (AR 32.) As for the vocational expert, the ALJ asked her whether a hypothetical individual with the physical

limitations that ultimately comprised Plaintiff's RFC could perform any unskilled jobs. (AR 55–56.) The vocational expert responded that such a hypothetical individual could perform work as a cashier, assembler, or housekeeper-hotel. (AR 56.) Testimony from a vocational expert "concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).

Based on the ALJ's consideration of the foregoing, the Court finds that substantial evidence shows that the ALJ's RFC adequately accounted for all limitations the ALJ found credible, including limitations related to Plaintiff's IBS symptoms. Importantly, the RFC finding is in line with that of reviewing state agency physicians, whose opinions the ALJ must consider. *See Miller*, 811 F.3d at 834. Further, an ALJ's decision is appropriately considered "determinative if there is such relevant evidence as a reasonable mind might accept as sufficient to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)) (internal quotations omitted). Given the ALJ's discussion of Plaintiff's IBS symptoms, this is clearly not a case involving an ALJ's failure to evaluate an impairment when considering a claimant's overall functional capacity, which would represent reversible error. *See Flory v. Comm'r of Soc. Sec.*, 477 F. Supp. 3d 672, 679 (S.D. Ohio 2020) (noting that an ALJ does not commit error if he addresses all of a claimant's impairments in formulating the RFC) (internal citations omitted).

Further, the ALJ considered the majority of the medical evidence in the record related to Plaintiff's IBS symptoms. Although there were some medical records that the ALJ did not reference specifically, a failure to discuss those records does not mean that the ALJ did not consider them. *See Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("Although required

12

Case 3:24-cv-00544   Document 19   Filed 09/30/24   Page 12 of 15 PageID #: 691

to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). The evidence that the ALJ did cite supports the conclusion that, while Plaintiff experiences issues related to his IBS, his "ability to function is not impaired to an extent beyond that accounted for by his RFC." *Tippen v. Comm'r of Soc. Sec.*, No. 1:13-cv-1377, 2015 WL 1310778, at *7 (W.D. Mich. Mar. 24, 2015). *See Allison v. Comm'r of Soc. Sec.*, 347 F. Supp. 2d 439, 446 (E.D. Mich. 2004) ("[T]he ALJ reasonably concluded that[,] although [] Plaintiff's degenerative joint disease in her right shoulder and torn rotator cuff were serious, her restrictions were only as previously stated. Further, there is no other evidence that this Court is able to locate or that Plaintiff points to support the additional restrictions argued above.").

Plaintiff has not pointed to any evidence in the record that the ALJ overlooked or omitted that would indicate that the ALJ erred in his RFC determination. For example, Plaintiff cites to medical evidence from December 2021, January 2022, March 2022, and November 2022 to show that he "frequently complained of diarrhea and other gastric symptoms because of his IBS." (Docket No. 12-3 at 11.) However, the ALJ cited and discussed these records in his decision. (AR 33–34.) Plaintiff also cites to his hearing testimony about his frequent bathroom use (Docket No. 12-3 at 11–12), but the ALJ cited to that testimony as well (AR 32). Finally, Plaintiff references certain statements that he made in his two function reports regarding his IBS symptoms that the ALJ did not explicitly reference in his decision (Docket No. 12-3 at 12 (citing AR 224, 244)), but the extent of the ALJ discussion of both function reports makes clear that he considered them when

13

making his RFC determination. (AR 32–33.) Accordingly, the Court finds no error in the ALJ's failure to explicitly reference two particular sentences from Plaintiff's function reports.

In sum, the majority of the evidence to which Plaintiff points is evidence that the ALJ considered in his decision. Although the ALJ considered this evidence, Plaintiff believes that the evidence should merit a different and more restrictive RFC than the one that the ALJ decided. In other words, there is no dispute about what evidence the ALJ considered, but how he considered it. Yet when substantial evidence supports an ALJ's denial of benefits, as it does here, that finding must be affirmed, even if substantial evidence also exists in the record that could support a finding of disability. *Buxton v. Halter*, 246 F.3d 762, 772–73 (6th Cir. 2001). In other words, the ALJ has a "zone of choice" within which he can act, without fear of court interference. *Id.* at 773. Based on the ALJ's consideration of Plaintiff's medical records, testimony from Plaintiff and the vocational expert, Plaintiff's function reports, and the opinions of the reviewing state agency physicians, the Courts finds that substantial evidence supports the limitation formulated by the ALJ with respect to Plaintiff's IBS symptoms because the RFC adequately accounted for all limitations that the ALJ found credible. For these reasons, the Court rejects Plaintiff's assertion of error.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully **RECOMMENDED** that Plaintiff's motion for judgment on the administrative record (Docket No. 12) be **DENIED** and the SSA's decision be **AFFIRMED**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within

the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge